**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

STANLEY B. SMITH JR.,

    Plaintiff,

v.

ATLANTIC COUNTY, et al.,

    Defendants.

Civil Action No. 08-4763 (JBS)

**O P I N I O N**

**APPEARANCES**:
Stanley B. Smith, Jr. #586235, Plaintiff Pro Se
Southwoods State Prison
215 South Burlington Rd.
Bridgeton, New Jersey 08302

**Simandle**, District Judge:

This matter comes before the Court upon submission of a civil complaint ("Complaint") by Stanley B. Smith, Jr. ("Plaintiff"), an inmate currently confined at the Southwoods State Prison, who was apparently confined at the Atlantic County Justice Facility ("Facility") during the period from August 3, 2006, to August 5, 2007, seemingly while being a pre-trial detainee. See Compl. at 8; see also <<https://www6.state.nj.us/DOC_Inmate/details?x=1061440&n=1>> (detailing the public record compiled by the New Jersey Department of Corrections with respect to Smith, Stanley B., who is currently confined at Southwoods State Prison and was registered at the prison an August 9, 2007).

Having thoroughly reviewed Plaintiff's allegations stated in the Complaint and the application to proceed in forma pauperis and his Complaint, as required by 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1), this Court will grant Plaintiff in forma pauperis status and will dismiss, sua sponte, Plaintiff's Complaint, while allowing Plaintiff to file an amended pleading.

I. **BACKGROUND**

In his Complaint, Plaintiff names the following Defendants: (1) Shareholders and Owners of the Gerald L. Gormley Justice Facility of Atlantic County Correctional; (2) Atlantic County; (3) the City of Mays Landing; (5) Mr. Gary Merline, the warden of the Facility. See Compl. at 4-7. The Complaint, executed in a patchy style of drafting, details Plaintiff's opinion that certain amenities at the Facility, such as locks on the cell doors, intercoms, alarms, staircase railing, pathways enabling wheelchair access, etc., do not meet state regulatory requirements.[1] See id. at 4-11. Plaintiff, thus, expresses his opinion that potential safety needs of unspecified inmates housed at the Facility would not be met in the event of emergency, such as fire at the Facility, and the lives or health of the inmates housed therein might be, consequently, in danger. See id. The allegation made by Plaintiff that seemingly details a specific hardship Plaintiff experienced on

---

[1] It does not appear that Plaintiff is a person who is now or was in the past using a wheelchair or a similar device utilized by persons with disabilities. See generally, Compl.

his own is limited to a claim that, for an unspecified period of time, Plaintiff: (a) was housed at the medical unit of the Facility and, (b) during such housing, was allowed to stay outside his room for the maximum period of five hours a day, which Plaintiff alleges was insufficient.  See id. at 9-10.  Plaintiff clarifies that the aforesaid schedule, pursuant to which all Facility inmates housed at the medical unit were allowed out of their rooms for five hours a day, was implemented by the prison officials in order to enable a short and convenient access of the Facility's general inmate population to the medical personnel, which is located at the medical unit.  See id. at 10.  In addition, Plaintiff's reference to a double-bunking practice employed at the Facility suggests that Plaintiff might have been sharing his cell with other inmate(s) pursuant to this practice during his stay at the Facility.  See id. at 4.

## II.   STANDARD FOR SUA SPONTE DISMISSAL

In determining the sufficiency of a complaint, the Court must be mindful to construe the facts stated in the complaint liberally in favor of the plaintiff.  See Haines v. Kerner, 404 U.S. 519 (1972); United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992).  The Court should "accept as true all of the [factual] allegations in the complaint and reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff."  Morse v. Lower Merion School Dist., 132 F.3d 902, 906

(3d Cir. 1997). While a court will accept well-pled allegations as true, it will not accept bald assertions, unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations. See id.

The Court of Appeals for the Third Circuit recently provided a detailed and highly instructive guidance as to what kind of allegations qualify as pleadings sufficient to pass muster under the Rule 8 standard. See Phillips v. County of Allegheny, 515 F.3d 224, 230-34 (3d Cir. 2008). The Court of Appeals guided as follows:

> [There are] two new concepts in Twombly [127 S. Ct. 1955 (2007)]. First, . . . "[w]hile a complaint . . . does not need detailed factual allegations, a plaintiff's [Rule 8] obligation [is] to provide the 'grounds' of his 'entitle[ment] to relief' requires [by stating] more than labels and conclusions, and a formulaic recitation of the elements of a cause of action . . . ." Twombly, 127 S. Ct. at 1964-65 . . . Rule 8 "requires a 'showing,' rather than a blanket assertion, of entitlement to relief." Id. at 1965 n.3. . . . "[T]he threshold requirement of Rule 8(a)(2) [is] that the 'plain statement [must] possess enough heft to 'sho[w] that the pleader is entitled to relief.'" Id. at 1966. [Hence] "factual allegations must be enough to raise a right to relief above the speculative level." Id. at 1965 & n.3. Second, the Supreme Court disavowed certain language that it had used many times before -- the "no set of facts" language from Conley. See id. at 1968. . . .
> [T]he Twombly decision focuses our attention on the "context" of the required short, plain statement. Context matters in notice pleading. . . . [Thus,] taking Twombly and the Court's contemporaneous opinion in Erickson v. Pardus, 127 S. Ct. 2197 (2007), together, we understand the Court to instruct that a situation may arise where . . . the factual detail in a complaint is so undeveloped that it does not provide a defendant the type of notice of claim which is contemplated by Rule 8. See Airborne Beepers & Video, Inc., v. AT&T Mobility L.L.C., 499 F.3d 663, 667 (7th Cir. 2007). . . . After Twombly, it is no longer sufficient to allege mere elements of a cause of

4

> action; instead "a complaint must allege facts suggestive
> of the proscribed conduct." Id. . . . .
>     The more difficult question raised by Twombly is
> whether the Supreme Court imposed a new "plausibility"
> requirement at the pleading stage that materially alters
> the notice pleading regime.  . . . The Court explained
> that a plaintiff must "nudge [his or her] claims across
> the line from conceivable to plausible" . . . . 127 S.
> Ct. at 1974. . . . "Plausibility" is related to the
> requirement of a Rule 8 "showing." [Thus, while a court
> cannot] dismiss[] . . . a well-pleaded complaint simply
> because "it strikes a savvy judge that actual proof of
> those facts is improbable," the "[f]actual allegations
> must be enough to raise a right to relief above the
> speculative level." Id. at 1965. [T]he pleading standard
> can be summed up thus: "stating . . . a claim requires a
> complaint with enough factual matter (taken as true) to
> suggest" the required element. Id.  This "does not
> impose a probability requirement at the pleading stage[]"
> but . . . "calls for enough facts to raise a reasonable
> expectation that discovery will reveal evidence of" the
> necessary element. Id.

Phillips, 515 F.3d at 230-34 (original brackets removed).

**III.   DISCUSSION**

   **A.   Respondeat Superior Claims**

It is well established that supervisory liability cannot be imposed under § 1983 on a respondeat superior theory. See Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976). "'A[n individual government] defendant in a civil rights action must have personal involvement in the alleged wrongdoing; liability cannot be predicated solely on the operation of respondeat superior.'" Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005) (quoting Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). Personal involvement can be shown through allegations that a defendant directed had *actual* knowledge of the deprivation

of a plaintiff's constitutional rights. See id.; <u>Monell</u>, 436 U.S. at 694-95 (1978). Supervisory liability may attach if the supervisor implemented deficient policies and was deliberately indifferent to the resulting risk or the supervisor's actions and inactions were "the moving force" behind the harm suffered by the plaintiff. See <u>Sample v. Diecks</u>, 885 F.2d 1099, 1117-118 (3d Cir. 1989); <u>see also</u> <u>City of Canton v. Harris</u>, 489 U.S. 378 (1989); <u>Heggenmiller v. Edna Mahan Corr. Inst. for Women</u>, No. 04-1786, 128 Fed. App'x 240 (3d Cir. 2005). Hence, local government units cannot be liable under § 1983 solely on a theory of <u>respondeat superior</u>. See <u>City of Oklahoma City v. Tuttle</u>, 471 U.S. 808, 824 n.8 (1985); <u>Monell</u>, 436 U.S. at 690-91 (municipal liability attaches only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury" complained of); <u>Natale v. Camden County Correctional Facility</u>, 318 F.3d 575, 583-84 (3d Cir. 2003).

    Here, Plaintiff's claims against Atlantic County and the City of Mays Landing are based solely the theory of <u>respondeat</u> <u>superior</u>, since Plaintiff asserts that the County and the City are liable to Plaintiff simply because the Facility is located within geographic borders of the County and the City. See Compl. at 5-6. In fact, Plaintiff expressly states that, in his opinion, both the County and the City are unaware of the alleged violations asserted by

6

Plaintiff. See id. Consequently, as drafted, Plaintiff's allegations fail to state a claim against the City and the County upon which relief can be granted.

Plaintiff's allegations against "Shareholders and Owners of the Gerald L. Gormley Justice Facility of Atlantic County Correctional" will be dismissed for the reason that such "Shareholders and Owners" are non-existing entities, since the Facility is not a publically or privately held corporation. Moreover, even if the Court were to construe Plaintiff's allegations against such "Shareholders and Owners" as allegations against the County's Freeholders (or analogous public officials of the County or the City), these allegations must be dismissed, effectively, for the reasons articulated with regard to the City or the County.

As noted above, "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs . . . through [either] personal direction or . . . actual knowledge and acquiescence." Rode, 845 F.2d at 1207; accord Robinson v. City of Pittsburgh, 120 F.3d 1286, 1293-96 (3d Cir. 1997); Baker v. Monroe Twp., 50 F.3d 1186, 1190-91 (3d Cir. 1995).  Thus, to establish municipal liability (or liability of municipal officials) under § 1983, "a plaintiff must show that an official who has the power to make policy is responsible for either the affirmative proclamation of a policy or acquiescence in a well-settled custom." Bielevicz

v. Dubinon, 915 F.2d 845, 850 (3d Cir. 1990).  Consequently, the plaintiff must demonstrate that, through its deliberate conduct, the municipality or its officials were the moving force behind the plaintiff's injury.  See Monell, 436 U.S. at 689.

A policy is made "when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues a final proclamation, policy or edict." Kneipp v. Tedder, 95 F.3d 1199, 1212 (3d Cir. 1996) (quoting Pembaur v. City of Cincinnati, 475 U.S. 469, 481 (1986) (plurality opinion)).  A custom is an act "that has not been formally approved by an appropriate decisionmaker," but that is "so widespread as to have the force of law." Bd. of County Comm'rs of Bryan County, Oklahoma v. Brown, 520 U.S. 397, 404 (1977).

There are three situations where acts of a government employee may be deemed to be the result of a policy or custom of the governmental entity for whom the employee works, thereby rendering the entity liable under § 1983.  The first is where "the appropriate officer or entity promulgates a generally applicable statement of policy and the subsequent act complained of is simply an implementation of that policy."  The second occurs where "no rule has been announced as policy but federal law has been violated by an act of the policymaker itself."  Finally, a policy or custom may also exist where "the policymaker has failed to act affirmatively at all, [though] the need to take some action to

control the agents of the government is so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need." Natale, 318 F.3d at 584 (footnote, quotation marks and citations omitted).

Here, Plaintiff's allegations do not suggest that the actions of the "Shareholders and Owners" fall within either of these three exceptions. See Compl. at 4-6. Consequently, Plaintiff's allegations against these entities should be dismissed even if these allegations are construed as allegations against the County's Freeholders or the City officials. It follows that, among Defendants named in the Complaint, the sole viable Defendant is the Facility's warden. However, for the reasons stated below, Plaintiff's allegations against the warden will also be dismissed.

**B.   DUE PROCESS ALLEGATIONS**

Since it appears that Plaintiff was held at the Facility as a pre-trial detainee, the Court examines Plaintiff's allegations under the test applicable to Fourteenth Amendment due process claims. "[T]he Due Process rights of a pre-trial detainee are at least as great as the Eighth Amendment protections available to a convicted prisoner," Reynolds v. Wagner, 128 F.3d 166, 173 (3d Cir. 1997) (citation omitted); see also Bell v. Wolfish, 441 U.S. 520, 544 (1979); City of Revere v. Massachusetts, 463 U.S. 239, 244

9

(1983), and the Eighth Amendment sets forth the floor for the standard applicable to the claims of pre-trial detainees. See Bell, 441 U.S. at 544. Thus, a failure of prison officials to provide minimally civil conditions of confinement to pre-trial detainees, or deliberate indifference to a serious medical needs of such detainees, violates their right not to be punished without due process of law. See Reynolds, 128 F.3d at 173-74; Monmouth County Correctional Institution Inmates v. Lanzaro, 834 F.2d 326, 345-46, n.31 (3d Cir. 1987); see also Estelle v. Gamble, 429 U.S. 97, 104 (1976); Farmer v. Brennan, 511 U.S. 825 (1994).

Addressing a conditions-of-confinement claim, the court should analyze whether a civil detainee has been deprived of liberty without due process; such analysis is governed by the standards set out by the Supreme Court in Bell v. Wolfish, 441 U.S. 520. See Fuentes, 206 F.3d at 341-42.

> In evaluating the constitutionality of conditions or restrictions of [civil] detention that implicate only the protection against deprivation of liberty without due process of law, we think that the proper inquiry is whether those conditions amount to punishment of the detainee. For under the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law. . . . Not every disability imposed during [civil] detention amounts to "punishment" in the constitutional sense, however. Once the government has exercised its conceded authority to detain a person pending trial, it obviously is entitled to employ devices that are calculated to effectuate this detention. . . . A court must decide whether the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose. Absent a showing of an expressed intent to punish on the part of detention facility

10

> officials, that determination generally will turn on whether an alternative purpose to which [the restriction] may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned [to it]. Thus, if a particular condition or restriction of [civil] detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to "punishment." Conversely, if a restriction or condition is not reasonably related to a legitimate goal--if it is arbitrary or purposeless--a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees qua detainees.

Bell v. Wolfish, 441 U.S. at 535-39 (quotation marks and citations omitted).

The Court of Appeals further explained that the government has legitimate interests that stem from its need to maintain security and order at the detention facility. "Restraints that are reasonably related to the institution's interest in maintaining jail security do not, without more, constitute unconstitutional punishment, even if they are discomforting and are restrictions that the detainee would not have experienced had he been released while awaiting trial." Id. at 540. Retribution and deterrence, however, are not legitimate nonpunitive governmental objectives. Id. at 539 n.20. Nor are grossly exaggerated responses to genuine security considerations. Id. at 539 n.20, 561-62.

The Third Circuit established a two-part test in line with Bell:

> we must ask, first, whether any legitimate purposes are served by these conditions, and second, whether these conditions are rationally related to these purposes. In

11

> assessing whether the conditions are reasonably related to the assigned purposes, we must further inquire as to whether these conditions cause [inmates] to endure [such] genuine privations and hardship over an extended period of time, that the adverse conditions become excessive in relation to the purpose assigned to them.

Union County Jail Inmates v. Di Buono, 713 F.2d 984, 992 (3d Cir. 1983).

### 1. Allegations Based on Five-Hour Recreation Schedule

Plaintiff asserts that his rights were violated when he, while being sick and housed at the medical unit of the Facility, was allowed only five hours outside his room. According to Plaintiff, the policy was implemented to provide a speedy and easy access of the Facility's general inmate population to the medical professionals stationed at the medical unit. These allegations are defective for a number of reasons. To start, it is not entirely clear to this Court how one can factually harmonize the need of an inmate who is so sick to require housing at the medical unit with the very same inmate's need to move around the Facility for more than five hours a day; indeed, the five hour period appears to be sufficient to satisfy such sick inmate's needs for both exercise and socialization with inmates other than his cell-mate(s).

Moreover, Plaintiff's claim suffers from a legal flaw. Here, Plaintiff himself spells out the legitimate governmental objective to which the challenged policy was related: he unambiguously states that the Facility officials instituted the policy of keeping the inmates (who were so sick that they had to be housed within the

12

medical unit) in their rooms (and allowed them only five hours outside their rooms) in order to ensure convenient, speedy and infection-safe access to the medical department by those inmates who were housed in general population but required medical help. No language in the Fourteenth Amendment or in the case law interpreting this core provision indicates that the prison officials should achieve a legitimate governmental objective through the method which would be "equally burdensome" on inmates housed in the medical unit and those housed in the general population. Similarly, the Fourteenth Amendment does not require the prison officials to put the needs of certain inmates in preferential position; all that is required is a reasonable relationship between the action taken and a legitimate governmental objective. See Bell v. Wolfish, 441 U.S. at 535-39. Moreover, even if the selection of the method of achieving a legitimate governmental objective takes into consideration administrative conveniences of prison officials, such selective process does not violate the inmates' constitutional rights. See O'Lone v. Estate of Shabazz, 482 U.S. 342, 352-53 (1987) (reaching an administrative decision, prison officials may factor in the needs of other inmates, as well as administrative conveniences of prison personnel and best modes to apply prison resources). Thus, the Facility's policy of five-hours-only-outside-the-room for the inmates housed in the medical unit could not violate Plaintiff's Fourteenth

13

Amendment rights, since the Facility's officials had a legitimate interest in ensuring convenient and speedy access of the inmates housed in the general population to the medical professionals, same as the prison officials had legitimate interest in ensuring that mingling between very sick inmates and those housed in the general population would not expose the health of the latter to the danger of an infection or to an analogous spread of a disease. Consequently, Plaintiff's allegations against Warden Gary Merline based on this five-hours-outside-the-room policy will be dismissed with prejudice.

### 2.  Double-Bunking Allegations

Plaintiff's double-bunking claim, *as stated*, fares no better. In Bell, the Supreme Court held that the fact of double-bunking per se did not constitute punishment, and therefore, cannot violate the pretrial detainees' due process rights. See Bell v. Wolfish, 441 U.S. at 541-43.  The Court explained that only the conditions of confinement provided "in such a manner as to cause [detainees] to endure genuine privation and hardship over an extended period of time" raises a due process concern.  Id. at 542; see also United States v. Sutton, 2007 U.S. Dist. LEXIS 79518 (D.N.J. Oct. 25, 2007) (finding that overcrowding-related deprivations existed where the incarcerations conditions included, inter alia, such hardships as: (a) triple overload of jail population; (b) presence of three toilet commodes, one urinal and four sinks per 64 inmates; (c) the

14

fact of inmates eating while being sat on toilets; (d) frequent violence resulting from overcrowding; (e) severe fly and rodent infestation; (f) dire cold during winter and heat during summer; and (g) either complete lack of ventilation or inputs of fresh air accompanied by big clouds of fiber, dust and dirt); Hennessey v. Atl. County Dep't of Pub. Safety, 2006 U.S. Dist. LEXIS 72754 (D.N.J. Sept. 18, 2006) (finding a possibility of overcrowding-related deprivations in view of the fact that the overcrowding claim was accompanied by allegations that the facility failed to medically screen inmate food handlers and forced the inmates to sit on toilets to eat meals).

Here, by contrast, the Complaint does not suggest that Plaintiff's exposure to the double-bunking policy caused Plaintiff any privation and hardship. Therefore, Plaintiff's allegations to that effect will be dismissed, although such dismissal will be without prejudice.

### 3.  Speculative Allegations on Behalf of Others

Finally, Plaintiff's opinion that the Facility's door locks, intercoms, alarms, staircase rails and wheelchair access paths do not meet state regulatory requirements or might pose a danger to health, lives or conveniences of other inmates fail to state a cognizable claim. An allegation that a certain condition does not meed a state regulatory requirement does not amount to a claim of constitutional magnitude; the Fourteenth Amendment does not provide

individuals with the right to enforce state regulatory regimes. See Bell v. Wolfish, 441 U.S. at 535-39 (detailing the applicable standard). Moreover, Plaintiff's claims as to hypothetical dangers of certain prison conditions should be dismissed as speculative, since Plaintiff fails to state facts indicating an actual injury is imminent. "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 127 S. Ct. at 1965; see See Patterson v. Lilley, 2003 U.S. Dist. LEXIS 11097 (S.D.N.Y. June 20, 2003) (defendants could only be held liable for the existing injury or imminent, not a speculative future injury); see also Kirby v. Siegelman, 195 F.3d 1285 (11th Cir. 1999) (spelling out that a 42 U.S.C. § 1983 claim by a prisoner about his future condition cannot be deemed ripe for adjudication where the prisoner has not yet suffered--or is in immediate danger of--any injury).

Finally, Plaintiff has no standing to bring these speculative (or even non-speculative) claims on behalf of other inmates. Under the "next friend" doctrine, standing is allowed to a third person so this third person could file and pursue a claim in court on behalf of someone who is unable to do so on his or her own. The doctrine dates back to the English Habeas Corpus Act of 1679 and provides a narrow exception to the "case in controversy" requirement set forth in the Article III of Constitution. See Whitmore v. Arkansas, 495 U.S. 149, 154-55 (1990). The Whitmore Court set out two requirements that should be met by the one

16

seeking to qualify for "next friend" standing: (1) "the 'next friend' must be truly dedicated to the best interests of the person on whose behalf [(s)he] seeks to litigate" (and it has been further suggested that a "'next friend' must have some significant relationship with the real party in interest"); and (2) "the 'next friend' must provide an adequate explanation--such as inaccessibility, mental incompetence, or other disability--why the real party in interest cannot appear on his own behalf to prosecute the action." Id. at 163-64. The burden is on the "next friend" to justify his/her status and, thereby, to obtain the jurisdiction of the federal courts. See id. at 164. In view of these requirements, this Court cannot currently recognize Plaintiff as "next friends" of unspecified prisoners housed at the Facility: the Court cannot satisfy even the first prong of the Whitmore test since the Court has no information as to what is Plaintiff's relationship to these unspecified prisoners and/or whether Plaintiff is "truly dedicated to the best interests" of these prisoners. Moreover, the Court has no evidence verifying mental incompetence of these unspecified prisoners, and of their inability to vindicate their own legal rights without Plaintiffs' assistance. Therefore, this Court finds that the second prong of the Whitmore test is also unsatisfied.

Consequently, Plaintiff's individual and jus tertii claims against the warden will be dismissed.

**IV.  CONCLUSION**

In view of the foregoing, the Court will grant Plaintiff in forma pauperis status.

The Court will dismiss Plaintiff's jus tertii allegations, with prejudice, for lack of standing.  Plaintiff's speculative allegations as to the potential dangers that might ensue from the Facility's non-compliance with state regulations will be similarly dismissed, with prejudice, for failure to state a claim upon which relief can be granted.  Plaintiff's allegations based on the Facility's policy allowing Plaintiff, as an inmate temporarily housed at the Facility's medical unit, five hours a day outside Plaintiff's room will be similarly dismissed, with prejudice, for failure to state a claim upon which relief can be granted.

However, Plaintiff's other allegations will be dismissed without prejudice, and Plaintiff will be allowed to file an amended pleading curing the shortcomings of his Complaint.[2]  Specifically,

---

[2] Plaintiff, however, is expressly cautioned that, if he elects to file an amended complaint, the amended complaint must comply with Rule 20(a)(2) of the Federal Rules of Civil Procedure, which limits the joinder of defendants, and Rule 18(a), which governs the joinder of claims.  See Fed. R. Civ. P. 18(a), 20(a)(2).  Rule 18 (a) provides: "A party asserting a claim . . . may join, as independent or alternative claims, as many claims as it has against an opposing party."  Fed. R. Civ. P. 18(a).  But Rule 20(a)(2) provides: "Persons . . . may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action."  Fed. R. Civ. P. 20(a)(2)(A) & (B); see United

Plaintiff's double-bunking allegations will be dismissed without prejudice in order to provide Plaintiff with an opportunity to detail the privation and hardship, if any, which Plaintiff suffered as a result of the double-bunking policy. Plaintiff's claims against the City of Mays Landing and Atlantic County will similarly be dismissed without prejudice, to enable Plaintiff's elaboration on these entities' personal involvement, if any, in Plaintiff's injuries. In addition, Plaintiff will be allowed to elaborate, in his amended complaint, or those claims, if any, that Plaintiff wished to state in his instant Complaint but which were not addressed by the Court in this Opinion. Plaintiff must file any

---

States v. Mississippi, 380 U.S. 128, 143 (1965) (where county registrars alleged to be carrying on activities that were part of series of transactions or occurrences, the validity of which depended upon questions of law or fact common to all of them, joinder of registrars in one suit as defendants was proper under Rule 20(a)). Plaintiff, therefore, may not name more than one defendant in the amended complaint unless one claim against each additional defendant is transactionally related to the claim against the first defendant, and involves a common question of law or fact. See Fed. R. Civ. P. 20(a)(2). See George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007)(prisoner may not join in one case all defendants against whom he may have a claim, unless he satisfies the dual requirements of Rule 20(a)(2)). The Plaintiff is further advised that Rule 21 provides that "[m]isjoinder of parties is not a ground for dismissing an action [but o]n motion or on its own, the court may at any time, on just terms, add or drop a party." Fed. R. Civ. P. 21. In the event that Plaintiff improperly joins defendants in an amended complaint contrary to Rule 20(a)(2), the Court will consider the proper and just application of Rule 21.

such amended complaint within thirty (30) days hereof, or this dismissal will operate as a dismissal with prejudice.

An appropriate order accompanies this Opinion.

                                     **s/ Jerome B. Simandle**
                                     **Jerome B. Simandle**
                                     **United States District Judge**

Dated: **October 14, 2008**