UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|   |   |   |
|---|---|---|
| STANLEY B. SMITH JR., | : | |
| | : | Civil Action No. 08-4763 (JBS) |
| Plaintiff, | : | |
| | : | |
| v. | : | **MEMORANDUM OPINION** |
| | : | |
| ATLANTIC COUNTY, et al., | : | |
| | : | |
| Defendants. | : | |

**SIMANDLE, District Judge**:

    This case is again before the Court upon preliminary screening of plaintiff's Amended Complaint, which was filed November 3, 2008. The Court's findings follow pursuant to the standards of 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1), as previously set forth in this Court's Opinion herein filed October 14, 2008 (Docket Entry No. 2).

    1.  On September 24, 2008, plaintiff Stanley B. Smith, Jr., filed his original complaint regarding conditions of confinement at the Atlantic County Justice Facility asserting that: (a) in Plaintiff's opinion, certain amenities at the facility of his confinement, such as locks on the cell doors, intercoms, alarms, staircase railing and pathways presented potential safety hazards; (b) Plaintiff, while being housed at the medical unit of the facility, was allowed to stay outside his cell for the maximum period of five hours a day, which Plaintiff alleges to be insufficient for his recreational and socializing needs; and (c) Plaintiff shared his cell with another inmate and slept on a

mattress placed on a floor, pursuant to the a double-bunking practice employed at the facility. See Docket Entry No. 1.

    2. On October 14, 2008, this Court issued an order and accompanying opinion ("October Opinion", see Docket Entries Nos. 2 and 3, explaining to Plaintiff that his claims based on insufficient recreation lacked merit, same as his speculative allegations asserting potential safety hazards, and his double-bunking allegations were deficient since they did not indicate that the double-bunking policy caused Plaintiff any privation and hardship. See Docket Entry No. 2, at 9-17. The Court, therefore, dismissed Plaintiff's speculative allegations and those based on the alleged insufficiency of recreation with prejudice but granted Plaintiff leave to amend his complaint as to the double-bunking claims (and, if the shortcomings of these claims were cured, Plaintiff's claims against the city, county and prison officials). Finally, Plaintiff was expressly encouraged to elaborate, in his amended complaint, on all other claims, if any, that Plaintiff wished to state in his original complaint but stated in such a fashion that the Court did not detect them and, hence, could not address them in its October Opinion. See id. at 18-19.

    3. On November 3, 2008, Plaintiff submitted his amended complaint, which was, effectively, a lengthy paraphrasing of the original complaint. See Docket Entry No. 4. Specifically, with respect to his double-bunking claim, Plaintiff clarified that he

2

"was forced to sleep on a stack bunk on the floor in a small room [which housed also] another inmate," Plaintiff's "head and other parts of [the body were] placed by the toilet where [Plaintiff's cell-mate] urin[ated] throughout the day and night," and "in addition, the cell [was] extremely small."  Docket Entry No. 4, at 1-2.  The remainder of the amended complaint consists of the reiterated safety hazard claims, i.e., it keeps re-stating Plaintiff's allegations that the cell locks could be insufficient in the event of a fire hazard, that the monitoring officers could be unable to alleviate a fire hazard by not visiting the cells more frequently than every 30 minutes, etc.  See id. at 1-3.  In addition, Plaintiff reiterates his allegations asserting insufficiency of the recreation Plaintiff was getting when the policy (which allowed him to stay outside his room for the maximum period of five hours a day) was implemented; Plaintiff alleged, again, that the policy was a violation of his rights because: (a) the policy ensued from the warden's decision to allow the prison general population to the facility's medical professional through the medical unit, which inconvenienced the inmates housed in the medical unit by limiting their period outside their cells; and (b) the policy was eventually changed, and the general population inmates were directed to go through an alternative longer route to the medical professionals, which – in turn – yielded a more favorable recreational schedule for the inmates like Plaintiff, who were housed in the medical unit.  See

id. at 4-5.  Finally, the amended complaint has a handful of vague additional "hints" at allegations, such hints are scattered throughout the body of the amended complaint and elaborate on the imperfections of the facility, e.g., Plaintiff asserts that "the lighting in the showers could have easily been fixed," which suggests that the lighting in shower area could be poor.  See id. at 6.

    4.  The Court already explained to Plaintiff the standard, pursuant to which the Court screens civil complaints. Specifically, this Court pointed out that the Court of Appeals guided as follows:

> First, while a complaint . . . does not need detailed factual allegations, a plaintiff's Rule 8 obligation [is] to provide the 'grounds' of his 'entitlement to relief' requires by stating more than labels and conclusions, and a formulaic recitation of the elements of a cause of action. [Second,] a plaintiff must nudge his or her claims across the line from conceivable to plausible. [Thus,] the factual allegations must be enough to raise a right to relief above the speculative level.

4

Docket Entry No. 2, at 4-5 (quoting Phillips v. County of Allegheny, 515 F.3d 224, 230-34 (3d Cir. 2008)) (internal quotation, citations, bracketing and ellipses omitted).

    5.    Thus, as it was already pointed out to Plaintiff, Plaintiff's speculative allegations as to potential safety hazards that might arise from allegedly faulty locks on the cell doors, or poor alarm systems, or insufficiently frequent – in Plaintiff's opinion – monitoring of the cells by the prison officials, fail to state a cognizable claim. Similarly, the alleged former restrictions on recreation (allowing the inmates housed in the medical unit only five hours per day outside their cells) could not be deemed a violation of Plaintiff's rights simply because these restrictions were eventually lifted by the prison officials. Indeed, finding otherwise would result in an anomalous scenario where the prison officials would be unable to improve the prisoners' conditions of confinement without risking the claim that the pre-improvement conditions were a violation of the prisoners' rights. As this Court already explained to Plaintiff, the fact that Plaintiff, being a medical patient, was allowed only five hours outside his cell did not violate his rights, especially in view that Plaintiff suffered no injury as a result of this policy, e.g., Plaintiff does not assert that he endured any distinct physical harm; and the fact that the policy was eventually altered favorably to Plaintiff does not change the

outcome of the Court's analysis.  See Docket Entry No. 2, at 12-15.

    6.   Plaintiff's amended double-bunking claim fares no better.  Plaintiff essentially asserts now that he is displeased with the fact that his bunk is located on the floor near the toilet (apparently, because the cell is small), and his cell-mate utilized the toilet for his needs during the day and night hours. However, the fact of double-bunking (materialized in Plaintiff's sleeping on the floor-bunk) and a small cell (where Plaintiff was located because of his medical condition) fails to state a claim if it read in light of: (a) Plaintiff's assertion that he was allowed five hours outside his cell, and this period of time outside the cell has been enlarged; (b) Plaintiff suffered no genuine privation and hardship (short of his inability to move around uninhibited by the five-hour limitation), i.e., Plaintiff does not assert that, as a result of the double-bunking, he incurred a disease, or suffered from splashing of human waste upon him, or the like); and (c) Plaintiff's failure to allege facts suggesting that the totality of circumstances within the facility qualify Plaintiff's conditions of confinement as extraordinary or unnecessary punishment.  See Hubbard v. Taylor, 538 F.3d 229 (3d Cir. 2008) (setting forth the totality of circumstances test and expressly rejecting the Second Circuit's position – expressed in Lareau v. Manson, 651 F.2d 96 (2d Cir. 1981) -- that floor mattresses, overcrowded dayrooms and strained prison services are per se unconstitutional).

7.    This Court previously pointed out these pleading deficiencies and gave Mr. Smith the opportunity to cure them in an amended complaint.  Plaintiff's amended complaint unambiguously indicates that, short of his disappointment with the fact of double-bunking and his desire to keep reiterating his "insufficient recreation" and speculative "future hazard" allegations, Plaintiff has no other claims.  See generally, Docket Entry No. 4.  Ordinarily, plaintiff may be granted "leave [to amend,] . . . when justice so requires."  Foman v. Davis, 371 U.S. 178, 182 (1962); Lorenz v. CSX Corp., 1 F.3d 1406, 1414 (3d Cir. 1993).  However, allowing a second leave to amend where there is a stark absence of any suggestion by the plaintiff that he has any facts, which would, if true, cure the defects of his pleadings, frustrates the objectives of both Rule 15 and the screening requirement, which operates as a devise allowing the court to filter out the lawsuits that have no factual basis.  Therefore, a repeated leave to amend is not warranted in this matter, and the amended complaint will be dismissed with prejudice.  The accompanying Order is entered.


**February 26, 2009**                    **s/ Jerome B. Simandle**
Date                                     JEROME B. SIMANDLE
                                         U.S. District Judge